## BANKS v. MANCHESTER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 45. Submitted October 29, 1888. — Decided November 19, 1888.

In a hearing on bill and answer, allegations of new matter in the answer are to be taken as true.

Where the judge of the Supreme Court of a State prepares the opinion or decision of the court, the statement of the case and the syllabus or head-note, and the reporter of the court takes out a copyright for such matter in his name " for the State," the copyright is invalid.

A copyright, as it exists in the United States, depends wholly on the legislation of Congress.

The judge who, in his judicial capacity, prepares the matter above mentioned, is not its author or proprietor, in the sense of § 4952 of the Revised Statutes, so that the State can become his assignee and take out a copyright for such matter.

BILL IN EQUITY, to restrain the defendant from infringing the plaintiffs' copyright. The defendant answered, and the complainants demurred to the answer. Decree dismissing the bill, from which plaintiffs appealed. The case is stated in the opinion of the court.

*Mr. Edward L. Taylor,* for appellants, cited : *United States v. Hillegas's Executors,* 3 Wash. C. C. 70 ; *Hines v. North Carolina,* 10 Sm. & Marsh. 529 ; *Mexico v. De Arangois,* 5 Duer (N. Y.) 634 ; *Wheaton v. Peters,* 8 Pet. 591 ; *Banks v. De Witt,* 42 Ohio St. 263 ; *Little v. Gould,* 2 Blatchford, 362 ; *Stationers v. Patentees about the Printing of Rolls' Abridgment, Carter,* 89 ; *Millar v. Taylor,* 4 Burrow, 2383 ; *Basket v. University of Cambridge,* 1 Wm. Bl. 105 ; *Myers v. Callaghan,* 5

Fed. Rep. 726; *Gould* v. *Banks*, 53 Conn. 415; *Banks* v. *West Publishing Co.*, 27 Fed. Rep. 50.

*Mr. Richard A. Harrison*, for appellee, cited: *United States* v. *Rhodes*, 1 Abbott (U. S.) 28; *People* v. *Imlay*, 20 Barb. 68; *Gendell* v. *Orr*, 13 Phila. 191; *Miller* v. *Taylor*, 4 Burrow, 2383; *Lindsley* v. *Coats*, 10 Ohio, 243; *King* v. *Beck*, 15 Ohio, 559; *Banks* v. *West Publishing Co.*, 27 Fed. Rep. 50; *Myers* v. *Callaghan*, 5 Fed. Rep. 726; *Nash* v. *Lathrop*, 142 Mass. 29; *Atwill* v. *Ferrett*, 2 Blatchford, 39; *Connecticut* v. *Gould*, 34 Fed. Rep. 319; *Gould* v. *Banks*, 53 Conn. 415; *Davidson* v. *Wheelock*, 27 Fed. Rep. 61; *Chase* v. *Sanborn*, 4 Cliff. 306; *Myers* v. *Callaghan*, 20 Fed. Rep. 441; *Banks* v. *Manchester*, 23 Fed. Rep. 143.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

The Revised Statutes of Ohio, in §§ 426 to 435, (title 4, chapter 1, pp. 273, 274, edition of 1879,) provide for the appointment of a reporter by the Supreme Court of that State, to report and prepare for publication its decisions, and for the printing of copies of the reports by the public printer, and for their distribution to public officers, as soon as a form of sixteen pages of printed matter is printed, and also for the binding and distribution of a full volume.

Section 436 provides as follows: " The reporter shall secure a copyright, for the use of the State, for each volume of the reports so published; and he shall receive such compensation for his services, not exceeding eighteen hundred dollars per year, during the time the Supreme Court Commission is in session; and at all other times not exceeding one thousand dollars yearly, payable out of the state treasury, in such instalments as the Supreme Court by order entered on its journal, directs."

Section 437, as amended by the act of January 17th, 1881, 78 Laws of Ohio, 14, provides for the mode of doing such printing and binding, under a contract to be made by the Secretary of State with a responsible person or firm, when and as often as he shall be authorized to do so by a resolution of

the General Assembly. That section says: "Such contract shall not be for a longer period than two years; and such contractor shall have the sole and exclusive right to publish such reports, so far as the State can confer the same during such period of two years, and shall be furnished with the manuscript to be printed, as provided in this chapter." It also provides not only for the printing and binding, and the furnishing to the State and the selling to the public, of copies of the volumes of the reports, but for the furnishing to the Secretary of State of a prescribed number of advance sheets of the reports, in forms of sixteen pages of printed matter.

On the 17th of April, 1882, the General Assembly of the State of Ohio passed the following joint resolution, 79 Laws of Ohio, 249:

"Joint resolution providing for the publication of the Ohio State Reports and the advance sheets of the same.

"Be it resolved by the General Assembly of the State of Ohio, That the Secretary of State be and he is hereby authorized to contract with some responsible person or firm to furnish material, print, bind and supply the State with three hundred and fifty copies of the thirty-eighth and any other subsequent volume or volumes of the Ohio state reports that may be ready for publication within two years from the 23d day of June, 1882, said contract to be made with the lowest responsible bidder, as provided in § 2, article 15, of the constitution, after first giving public notice to bidders for four weeks in some weekly newspaper published in Columbus, Ohio, and of general circulation in the State. Said contract to be made in accordance with the provisions and subject to the limitations and instructions of § 437 of the Revised Statutes, as to cost and otherwise and shall include the advance sheets provided for in said section. The volume to be, in quality of paper and binding, equal to . Volume 1 Ohio State Reports, as provided by law."

On the 16th of June, 1882, in pursuance of that resolution, the Secretary of State of the State of Ohio entered into a contract, on behalf of that State, and in which it was named as the party of the second part, with H. W. Derby & Co., of

Columbus, Ohio, the material parts of which were as follows: H. W. Derby & Co. agreed to furnish the material for, and to print and bind, on paper and in character and quality of binding equal to Volume 1 Ohio State Reports, in the manner in all respects and with the expedition as provided by law, a sufficient number of copies of Volume 38, and of the next succeeding volume or volumes, if any, of the Ohio State Reports, that might be ready for publication within two years from and after June 23d, 1882; to supply the State with a specified number of copies of each volume, when bound, at a specified price per volume; to supply the public with like copies at a specified, limited price; and to set up the matter furnished them in forms of sixteen pages, and furnish to the Secretary of State printed copies of such forms. The State agreed that Derby & Co. "shall have the sole and exclusive right to publish the reports aforesaid, so far as the said State of Ohio can confer the same, for and during the said period of two years, commencing with said 23d day of June, 1882, and that they shall, moreover, be furnished with all the manuscript thereof to be printed, as provided by law." Derby & Co. assigned all their right and interest in the contract to Banks & Brothers, of New York city.

The bill of complaint in the present case was filed by David Banks and A. Bleeker Banks, composing the firm of Banks & Brothers, against G. L. Manchester, in the Circuit Court of the United States for the Southern District of Ohio. It sets forth the matters above stated, and avers that Banks & Brothers have proceeded to carry out all the terms and conditions of the contract, and that they and the State of Ohio are complying with its conditions; that the Supreme Court of Ohio has decreed that Volumes 41 and 42 of the Ohio State Reports shall be published under and are included in the terms of the contract, and that no other persons have any right to publish the decisions which are to be contained in said Volumes 41 and 42, except as authorized by Banks & Brothers; that the contract was made in pursuance of §§ 436 and 437 of the Revised Statutes of Ohio; that the plaintiffs, on October 1st, 1884, entered into an arrangement with "The Capital Printing and

Publishing Company," of Columbus, Ohio, by which that company was authorized to publish the decisions of the Supreme Court of Ohio, and of the Supreme Court Commission of Ohio, which were to be contained in, and to constitute what would be, the 41st and 42d Ohio State Reports, the same to be published in " The Ohio Law Journal," a publication owned by said company ; that, under such arrangement, that company, on the 14th of October, 1884, issued its No. 9 of Volume 6 of " The Ohio Law Journal," and at the same time issued, as a supplement to that number, a certain book or publication containing, among other cases, one entitled " The Scioto Valley Railway Company v. McCoy," decided by the Supreme Court of Ohio, and which would appear as a part of Volume 42 of Ohio State Reports, and one entitled " Bierce et al. v. Bierce et al.," decided by the Supreme Court Commission of Ohio, and which would appear as a part of Volume 41 of Ohio State Reports; and that, before said book was issued, and on the 13th of October, 1884, E. L. DeWitt, "reporter for the Supreme Court of Ohio and of the Supreme Court Commission of Ohio, in pursuance of the duties of his office and for the benefit of the State of Ohio," entered in the office of the Librarian of Congress, at Washington, a printed copy of the title of said work, containing the said decisions, and did, within ten days thereafter, deposit in the said office, at Washington, two complete copies of said book.

A copy of the said number of " The Ohio Law Journal," with the book as a supplement, containing 16 printed pages, is attached to the bill. It shows the title of the book, or supplement, as entered in the office of the Librarian of Congress, and as afterwards issued, namely, " Cases argued and determined in the Supreme Court and Supreme Court Commission of Ohio; " and, below the title and table of contents, and on the first page of the book, which is page 17, is printed the following: "Entered according to the Act of Congress in the year eighteen hundred and eighty-four, by E. L. DeWit for the State of Ohio, in the Office of the Librarian of Congress, at Washington. [All rights reserved.] "

The bill avers that that title was printed on each copy of

the book issued by the Capital Printing and Publishing Company, as was also the above notice of copyright; that. the defendant, on November 5th, 1884, issued numbers 22 and 23 of Volume 1 of a book entitled " The American Law Journal," in one of which numbers he printed and published the said case of " Bierce et al. *v.* Bierce et al.," and in the other of which he printed and published the said case of " The Scioto Valley Railway Company *v.* McCoy;" that, prior to the said publication by the defendant, neither of said cases had been published except in the book so issued, on the 14th of October, by the Capital Printing and Publishing Company; and that those cases were copied by the defendant from the book so copyrighted by DeWitt for the State of Ohio. Copies of such publications of the defendant are annexed to the bill. It further avers that the defendant has declared to the plaintiffs in writing his intention to disregard their rights, and to continue the publication in " The American Law Journal " of the decisions of the Supreme Court and Supreme Court Commission of Ohio.

The prayer of the bill is for an injunction perpetually restraining the defendant from printing and publishing the decisions which will appear in Volumes 41 and 42, Ohio State Reports, and for an injunction to that effect *pendente lite.*

The defendant answered the bill. The answer denies that the Supreme Court of Ohio has decreed that Volumes 41 and 42 of the Ohio State Reports shall be published under and are included in the terms of the contract with Derby & Co., and that no other persons have the right to publish the decisions which are to be contained in said Volumes 41 and 42, except as authorized by the plaintiffs. It also denies that the attempt on the part of Mr. DeWitt, the reporter, to obtain a copyright on the book and printed matter described in the bill, and published by the Capital Printing and Publishing Company, was in pursuance of his duties as reporter; and denies that the attempted copyright by the reporter was for the benefit of the State of Ohio; and denies that the contract referred to was made in pursuance of § 436 of the Revised Statutes, but avers that it was made under § 437 and the joint resolution

referred to. It also avers that the opinions and decisions of
the Supreme Court and Supreme Court Commission of Ohio,
referred to in the bill as having been published by the defend-
ant in "The American Law Journal," were exclusively the
work of the judges composing those courts; that the reporter
performed no work in preparing the said opinions and decis-
ions; that it is the universal custom and practice of those
courts that the judge to whom the duty is assigned of prepar-
ing the opinion, prepares not only the opinion but also the
statement of the case and the syllabus, the latter being sub-
ject to revision by the judges concurring in the opinion; that
the reporter takes no part, and performs no labor, in prepar-
ing the syllabus, the statement of the case and the opinion;
that the duty of the reporter consists in preparing abstracts
of arguments of counsel, tables of cases, indexes, reading
proof and arranging the cases in their proper order in the
volumes of reports; and that the reporter is paid a stated an-
nual salary out of the treasury of the State, fixed by law, and
has no pecuniary interest in the publication of the reports.

The plaintiffs filed a formal demurrer to the answer; but,
no such pleading being authorized by the rules in equity, the
case was heard upon bill and answer, and a decree was entered
dismissing the bill, from which decree the plaintiffs have
appealed.

The decision of the Circuit Court is reported in 23 Fed. Rep.
143. That court held (1) that no duty was imposed upon the
reporter by the statutes of Ohio before mentioned, to secure a
copyright, for the use of the State, for any volume of reports
published by virtue of a contract made by the Secretary of
State under § 437; (2) that there was nothing in the statute
which authorized the reporter, or any other person to acquire
a copyright in the opinions or decisions of the judges; (3) that
the copyright of a volume would not interfere with the free
publication of everything which was the work of the judges,
including the syllabus and the statement of the case, as well
as the opinion, but would protect only the work of the re-
porter, namely, the indexes, the tables of cases, and the state-
ments of points made and authorities cited by counsel.

Rule 60 in equity authorizes the plaintiff, instead of filing a replication to an answer, to set the cause down for hearing upon bill and answer. In such case allegations of new matter in the answer are to be taken as true. 2 Daniell, Ch. Pr. (4th Am. ed.) 982, note 1; *Brinckerhoff* v. *Brown*, 7 Johns. Ch. 217, 223; *Perkins* v. *Nichols*, 11 Allen, 542, 544; *Leeds* v. *Marine Ins. Co.*, 2 Wheat. 380, 384. In the present case, it is to be taken as true, as alleged in the answer, that what the defendant published in "The American Law Journal" was exclusively the work of the judges, comprising not only the opinion or decision of the court or the commission, but also the statement of the case and the syllabus or head note. The copies of the publications made by the defendant, which are appended to the bill, show that the two cases referred to, published by him, consist in each case of only the syllabus or head note, the statement of the case, the names of the counsel for the respective parties, and the opinion or decision of the court.

The copy of the supplement to No. 9 of Volume 6 of "The Ohio Law Journal" appended to the bill, shows that what Mr. DeWitt undertook to obtain a copyright for, for the State of Ohio, in respect of the two cases referred to, was a report of each, consisting of the head note or syllabus, the statement of the case, the names of the counsel for the respective parties and the decision or opinion of the court, all in identical language, in each case, with what was so afterwards printed and published by the defendant in "The American Law Journal," except that in the case of "The Scioto Valley Railway Company *v.* McCoy," the words, "(To appear in 42 Ohio St.,)" and in the case of "Bierce et al *v.* Bierce et al," the words, "(To appear in 41 Ohio St.,)" printed in the publication in "The Ohio Law Journal," do not appear in the defendant's publication. It is, therefore, clear, that, in respect of the publication complained of, the reporter was not the author of any part of the matter for which he undertook to take a copyright, for the State of Ohio.

Although the Constitution of the United States, in § 8 of article 1, provides that the Congress shall have power "to

promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries," yet the means for securing such right to authors are to be prescribed by Congress. It has prescribed such a method, and that method is to be followed. No authority exists for obtaining a copyright, beyond the extent to which Congress has authorized it. A copyright cannot be sustained as a right existing at common law ; but, as it exists in the United States, it depends wholly on the legislation of Congress.   *Wheaton* v. *Peters*, 8 Pet. 591, 662, 663.

Section 4952 of the Revised Statutes of the United States provides, that " any citizen of the United States or resident therein, who shall be the author, inventor, designer, or proprietor of any book, . . . and the executors, administrators or assigns of any such person shall, upon complying with the provisions of this chapter," (chapter 3 of title 60,) " have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same." This right is granted for the term of twenty-eight years from the time of recording the title of the book in the manner directed in the statute ; and § 4954 provides, that " the author, inventor, or designer, if he be still living and a citizen of the United States or resident therein, or his widow or children, if he be dead, shall have the same exclusive right continued for the further term of fourteen years," upon recording the title of the work a second time, and complying with all other regulations in regard to original copyrights, within six months before the expiration of the first term.

We are of opinion that these provisions of the statute do not cover the case of the State of Ohio in reference to what Mr. DeWitt undertook to obtain a copyright for, for the benefit of that State, in the present instance. Mr. DeWitt, although he may have been a citizen of the United States or a resident therein, was not the author, inventor, designer, or proprietor of the syllabus, the statement of the case, or the decision or opinion of the court. The State, therefore, could not become the assignee of Mr. DeWitt, as such author, inventor, de-

signer, or proprietor. The State cannot properly be called a citizen of the United States or a resident therein, nor could it ever be in a condition to fall within the description in § 4952, or § 4954.

The copyright claimed to have been taken out by Mr. De-Witt in the present case, being a copyright "for the State," is to be regarded as if it had been a copyright taken out in the name of the State. Whether the State could take out a copyright for itself, or could enjoy the benefit of one taken out by an individual for it, as the assignee of a citizen of the United States or a resident therein, who should be the author of a book, is a question not involved in the present case, and we refrain from considering it and from considering any other question than the one above indicated. In no proper sense can the judge who, in his judicial capacity, prepares the opinion or decision, the statement of the case and the syllabus or head note, be regarded as their author or their proprietor, in the sense of § 4952, so as to be able to confer any title by assignment on the State, sufficient to authorize it to take a copyright for such matter, under that section, as the assignee of the author or proprietor.

Judges, as is well understood, receive from the public treasury a stated annual salary, fixed by law, and can themselves have no pecuniary interest or proprietorship, as against the public at large, in the fruits of their judicial labors. This extends to whatever work they perform in their capacity as judges, and as well to the statements of cases and head notes prepared by them as such, as to the opinions and decisions themselves. The question is one of public policy, and there has always been a judicial *consensus*, from the time of the decision in the case of *Wheaton* v. *Peters*, 8 Pet. 591, that no copyright could under the statutes passed by Congress, be secured in the products of the labor done by judicial officers in the discharge of their judicial duties. The whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute. *Nash*

v. *Lathrop*, 142 Mass. 29, 35. In *Wheaton* v. *Peters*, at p. 668, it was said by this court, that it was "unanimously of opinion that no reporter has or can have any copyright in the written opinions delivered by this court; and that the judges thereof cannot confer on any reporter any such right." What a court, or a judge thereof, cannot confer on a reporter as the basis of a copyright in him, they cannot confer on any other person or on the State.

*The decree of the Circuit Court is affirmed.*