KATSAS, Circuit Judge, concurring:
The plaintiffs here claim a copyright over binding legal texts, which would enable them to prevent anyone from gaining access to that law or copying it for the public. See 17 U.S.C. § 106. Moreover, saying what that law is, without plaintiffs' permission, would expose an individual to injunctive relief, impoundment, damages, attorneys' fees, and potentially even criminal liability. See id. §§ 502-506. As a matter of common-sense, this cannot be right: access to the law cannot be conditioned on the consent of a private party, just as it cannot be conditioned on the ability to read fine print posted on high walls. See Suetonius, Gaius Caligula ¶ XLI, in The Lives of the Caesars (J.C. Rolfe trans., Macmillan Co. 1914) ("he ... had the law posted up, but in a very narrow place and in excessively small letters, to prevent the making of a copy").
Not surprisingly, precedent confirms this instinct. In Banks v. Manchester , 128 U.S. 244, 9 S.Ct. 36, 32 L.Ed. 425 (1888), the Supreme Court held that judges cannot copyright their opinions, in part because their work "constitutes the authentic expression and interpretation of the law, which, binding every citizen, is free for publication to all." Id. at 253, 9 S.Ct. 36. Moreover, two courts of appeals have confirmed that Banks remains good law under the modern Copyright Act of 1976. In Building Officials & Code Administrators v. Code Technology, Inc. , 628 F.2d 730 (1st Cir. 1980), the First Circuit vacated a preliminary injunction that would have enforced the copyright of a model building code as enacted into Massachusetts law. While not definitively deciding the question, the court reasoned that enforcement of the copyright could not be "squared with the right of the public to know the law to which it is subject." Id. at 735. Similarly, in Veeck v. Southern Building Code Congress International , 293 F.3d 791 (5th Cir. 2002) (en banc), the Fifth Circuit held that "as law ," model rules adopted by a legislative body "enter the public domain and are not subject to the copyright holder's exclusive prerogatives." Id. at 793.
Today, the Banks rule might rest on at least four possible grounds: the First Amendment; the Due Process Clause of the Fifth Amendment; Section 102(b) of the Copyright Act, which denies copyright *459 protection to "any idea, procedure, process, system, method of operation, concept, principle, or discovery," 17 U.S.C. § 102(b) ; or Section 107 of the Act, which sets forth the fair-use doctrine, id. § 107. The Court today reasonably avoids what it correctly regards as "a serious constitutional concern" under the First and Fifth Amendments. Ante , at 446-47. And it expressly reserves, in substance though not by name, the question whether Section 102(b) extends protection to private standards as enacted into law. Ante , at 446-47.
The Court's fair-use analysis faithfully recites the governing four-factor balancing test, yet, in conducting the balancing, it puts a heavy thumb on the scale in favor of an unrestrained ability to say what the law is. Thus, when an incorporated standard sets forth binding legal obligations, and when the defendant does no more and no less than disseminate an exact copy of it, three of the four relevant factors-purpose and character of the use, nature of the copyrighted work, and amount and substantiality of the copying-are said to weigh "heavily" or "strongly" in favor of fair use. Ante , at 450, 452 . This analysis closely parallels Banks , which the Court explicitly invokes in its discussion of factor two. Ante , at 451. The Court acknowledges the thinness of the record in this case, and it appropriately flags potentially complicating questions about how particular standards may be incorporated into law, and whether such standards, as so incorporated, actually constitute "the law." Ante , at 446-47. But, where a particular standard is incorporated as a binding legal obligation, and where the defendant has done nothing more than disseminate it, the Court leaves little doubt that the dissemination amounts to fair use.
With that understanding, and recognizing that the Section 102(b) and constitutional issues remain open in the unlikely event that disseminating "the law" might be held not to be fair use, I join the Court's opinion.