## THE NIMROD.*

### (District Court, S. D. Alabama. April 4, 1905.)

1. SALES—ARTICLE TO BE MANUFACTURED—IMPLIED WARRANTY OF FITNESS.

Where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose known to him, so that the buyer necessarily trusts to the judgment and skill of the manufacturer, there is an implied warranty that it shall be reasonably fit for the desired purposè, and the seller is liable for any latent defect, not disclosed to the purchaser, either in material or workmanship.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 772, 774.]

Contracts for sale of things to be produced or manufactured, see note to Star Brewery Co. v. Horst, 58 C. C. A. 363.]

2. SAME—STEAM BOILER FOR TUG.

Where a contract to manufacture a boiler for a tug provided that it should be satisfactory to the engineer, the fact that the boiler was received by him and put in the tug does not necessarily constitute an acceptance, nor exclude the implied warranty of fitness by the manufacturer with respect to defects which were discoverable only by actual use.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 772–774, 818.]

3. SAME—BREACH OF WARRANTY—MEASURE OF DAMAGES.

The measure of damages for breach of the implied warranty of the manufacturer of the fitness of a boiler built for a tug and placed therein

*Affirmed in Circuit Court of Appeals, 141 Fed. 834.

is the cost of making it sound and fit for the purpose for which it was intended, and compensation for the loss of the use of the tug while the work was being done, which may reasonably be supposed to have been within the contemplation of the parties.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 1284–1290.]

4. PARTIES—ACTION ON CONTRACT—USE OF FICTITIOUS NAME.

　　Where the individual owners of a tug operated the same under the name of the "Tow Boat Company," and in such name contracted for a boiler to be built and placed therein, but there was in fact no corporation by that name, a claim for damages for breach of the manufacturer's warranty of the boiler is properly prosecuted in the name of the owners as individuals.

In Admiralty. Suit to recover balance due on a contract for a boiler for a tug, and cross-libel for damages.

Gregory L. & H. T. Smith, for libelant.

Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge. 1. Where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose known to him, so that the buyer necessarily trusts to the judgment and skill of the manufacturer, there is an implied warranty that it shall be reasonably fit for the desired purpose. This implies that the material and workmanship shall be good, and the vendor is liable in such case for any latent defect not disclosed to the purchaser arising from the manner in which the article was manufactured. 2 Benj. Sales. 988–993; Hoe v. Sanborn, 21 N. Y. 552, 78 Am. Dec. 163; Snow v. Schomacker Mfg. Co., 69 Ala. 111, 44 Am. Rep. 509; 15 Am. & Eng. Ency. of Law (2d Ed.) 1223, 1231; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537, 28 L. Ed. 86; Nashua Iron & Steel Co. v. Brush, 91 Fed. 213, 33 C. C. A. 456; Gage v. Carpenter, 107 Fed. 886, 47 C. C. A. 39; Pullman Car Co. v. Metropolitan Ry. Co., 157 U. S. 108, 15 Sup. Ct. 503, 39 L. Ed. 632.

2. Where a contract provides that work is to be done under the direction and supervision of an engineer or other person, whose determination shall be conclusive upon the parties, both parties are bound unless there is fraud or such a mistake as would show a want of good faith in the person exercising such direction and supervision. Kihlberg v. U. S., 97 U. S. 398, 24 L. Ed. 1106; Chicago & Santa Fe R. R. v. Price, 138 U. S. 185, 11 Sup. Ct. 290, 34 L. Ed. 917. In this case there is no such contract, and no such agreement can be implied from the terms of the contract. It provides that the construction of "the boiler is to be satisfactory to the engineer of the Nimrod." Acceptance of the work as satisfactory forecloses the parties, but such acceptance as satisfactory is a condition precedent, and must be shown. It is not shown in this case. The fact that the contract provided that the boiler was to be satisfactory to the engineer and that it was received and put in the tug would not exclude the implied warranty of the manufacturer if the defects in the boiler were discoverable only by actual use. Moreover, a breach of warranty is not waived by acceptance unless the defects were obvious at the time of acceptance. 24 Am. & Eng. Ency. of Law

(2d Ed.) 1903; Bagley v. Cleveland Rolling Mill Co. (C. C.) 21 Fed. 164.

3. Hartwell & Spotswood owned the tug Nimrod, and under the name of the "Tow Boat Company" operated it, and under that name contracted for and purchased the boiler from libelant. The "Tow Boat Company" is not a corporation, but a name used by Hartwell & Spotswood as individuals operating their tug Nimrod. They can recoup or counterclaim their damages for a breach of the implied warranty to the "Tow Boat Company." The measure of damages is, as a general rule, the difference between the actual value of the boiler and what its value would have been had it conformed to the implied warranty of libelant as to its workmanship and fitness. But purchasers are permitted to recover the cost of making the boiler comply with the requirements of the warranty. 24 Am. & Eng. Ency. of Law (2d Ed.) 1158, 1159; English v. Spokane Com. Co., 57 Fed. 451, 6 C. C. A. 416; 2 Schouler's Personal Property, § 585. The purchasers are also allowed such special damages as may fairly be supposed to have entered into the contemplation of the parties at the time the contract of sale was made, and which might naturally be expected to follow from the breach of the warranty. 24 Am. & Eng. Ency. of Law, supra, 1159, 1160; Pullman Car Co. v. Metropolitan Ry., supra; Stillwell Manufacturing Co. v. Phelps, 130 U. S. 520, 9 Sup. Ct. 601, 32 L. Ed. 1035; Crane Co. v. Columbus Constr. Co., 73 Fed. 984, 20 C. C. A. 233; 2 Sutherland on Damages, pp. 407–409, 422, 2 Schouler's Personal Property, supra.

4. The legal title to the tug Nimrod is in Hartwell & Spotswood, whatever may be the equities between them as owners of the tug and the tow boat association as to the net earnings of the tug. The cross-libel is, in my opinion, rightly filed in the name of the tug owners. The Thames, 14 Wall. 98, 20 L. Ed. 804.

On the evidence my opinion is: (1) That there was an implied warranty that the boiler would be constructed in a workmanlike manner, and would be reasonably fit for the use for which it was desired. (2) That the boiler was defective in its construction. That such defects were not obvious at the time the boiler was received by the tug, and were not known to the owners of the tug or to its engineer, but that the evidence tends to show they were known to the manufacturer, the libelant. (3) That there was a breach of the implied warranty. (4) That the cross-libelants have sustained special damages by reason of such breach, the elements of which are the reasonable cost of making the boiler sound and fit for the special use to which it was to be applied, the necessary expense incurred in connection therewith, and loss of the use of the tug during the time necessarily consumed in the work on the boiler. These damages, I think, were such as was reasonably to be anticipated by the parties would accrue in view of the special use to which the boiler was to be applied if it proved to be unfit for the purpose.

The aggregate of the cross-libelants' damages are $1,417.38, from which deduct the amount of balance due to libelant by the tug, to wit, $731.83, leaving a balance due cross-libelants of $685.55, for which let a decree be entered.